UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA MARIE GEIBIG,

                     No. 16-14290

    Plaintiff,                Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**OPINION AND ORDER**

Plaintiff Patricia Marie Geibig ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Widow's or Widower's Insurance Benefits under Title II of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #21] is DENIED, Plaintiff's Motion for Summary Judgment [Dock. #16] is GRANTED to the extent that the case is remanded for further administrative proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for benefits on September 19, 2014, alleging disability as of

September 19, 2009 (Tr. 123-124).[1] Upon initial denial of the claim, Plaintiff requested an administrative hearing, held May 2, 2016 in Livonia, Michigan (Tr. 20, 35). Administrative Law Judge ("ALJ") Henry Perez, Jr. presided. Plaintiff, represented by attorney Elizabeth Warren, testified (Tr. 38-50), as did Vocational Expert ("VE") Annette Holder (Tr. 50-54). On June 1, 2016, ALJ Perez found that Plaintiff was capable of performing her past relevant work as a cashier (Tr. 28, 30). On October 7, 2016, the Appeals Council denied review (Tr. 1-6). Plaintiff filed suit in this Court on December 8, 2016.

## II. BACKGROUND FACTS

Plaintiff, born August 21, 1962, was 53 at the time of the administrative decision (Tr. 30, 124). She completed 12th grade and worked as a retail clerk and laborer before the alleged onset of disability (Tr. 151). She alleges disability as a result of bipolar disorder, Post Traumatic Stress Disorder ("PTSD"), Attention Deficit Hyperactivity Disorder ("ADHD"), depression, herniated spinal discs, a hernia, asthma, vertigo, arthritis, Carpal Tunnel Syndrome ("CTS"), hypertension, prior substance abuse, and a hearing impairment (Tr. 149).

---

[1] Plaintiff later amended the onset of disability date to August 13, 2014 (Tr. 20). Because the August 13, 2014 alleged onset of disability post-dates the expiration of entitlement to DIB, Plaintiff voluntarily dismissed the claim for DIB, but pursued the claim for disabled widow's benefits. *Id.* Plaintiff is widow of a deceased worker, unmarried, and over 50. Thus, she meets the threshold requirements for widow's benefits (Tr. 21). The five-step sequential analysis for determining disability is the same as in a claim for DIB (Tr. 21-22).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

Her former work included a job as a shipping supervisor, requiring her to lift up to 35 pounds and stand or walk most of the day (Tr. 40). She also worked at a pharmacy as "a cashier and general help" worker, requiring her to work at the register and straighten shelves (Tr. 40-41). The pharmacy job required her to lift up to 35 pounds (Tr. 41).

Plaintiff's low back and neck pain was becoming progressively worse (Tr. 41). She was unable to turn her neck to the left or raise her left arm (Tr. 42). In spite of pain medication and injections, she experienced level "six to seven" pain on a scale of one to ten (Tr. 42). The pain was exacerbated by damp and cold weather (Tr. 43). Due to the lower back condition, she experienced lower extremity symptoms (Tr. 43). Epidural injections improved the condition (Tr. 43). She otherwise coped with the condition by taking Ibuprofen, using a heating pad, icing her back, using BenGay, taking mineral baths, and stretching (Tr. 44). She spent 60 to 70 percent of her time addressing symptoms (Tr. 44). Physical therapy improved her range of neck motion (Tr. 44-45). She was unable to lift more than 10 pounds, stand for more than five minutes, sit for more than 20 minutes, or walk for more than one quarter of a mile (Tr. 45, 50). After standing or walking, she required time to sit or lie down (Tr. 46).

Plaintiff lived in a ground floor apartment with her boyfriend, noting that she changed

to a ground floor apartment because she was unable to walk up stairs (Tr. 46). Her household chores were limited to wiping off the sink, putting dishes in the dishwasher, and wiping down the shower after bathing (Tr. 47). She cooked on an occasional basis (Tr. 48). She spent most of the day watching television (Tr. 48). She experienced concentrational problems due to both pain and bipolar disorder (Tr. 48). Her bipolar episodes were characterized by depressive episodes during which she became lethargic and reclusive (Tr. 49). She became frustrated during manic phases because her desire to be productive was hampered by physical problems (Tr. 49).

### B. Medical Records[2]

#### 1. Treating Records

In March, 2014, Plaintiff was advised to get wrist splints (Tr. 535). The following month, she was referred to physical therapy for chronic neck pain (Tr. 537). In June and August, 2014, Plaintiff sought urgent treatment for back pain (Tr. 529, 531). August, 2014 psychological intake records state that Plaintiff's former substance abuse and anxiety issues were complicated by chronic pain (Tr. 416). The same month, Tendai K. Thomas, M.D. noted Plaintiff's report of ongoing "aching, burning, and sharp" back pain (Tr. 513). In September, 2014, Plaintiff reported that she experienced lower extremity numbness (Tr. 376). Imaging studies of the chest were consistent with COPD (Tr. 382). Counseling notes state

---

[2]Treating records predating the alleged onset of disability are included for background purposes only.

that her dose of Abilify was increased (Tr. 421). In October, 2014, Dr. Thomas prescribed physical therapy for cervical and lumbar spine pain and radiculopathy of the upper and lower extremities (Tr. 329, 500, 502). Plaintiff reported "pins and needles" pain of the neck and shoulders (Tr. 330). Therapy records state that she attributed the spinal problems to motor vehicle accidents, falls, domestic abuse, and manual labor (Tr. 336). The following month, Plaintiff reported an improvement of symptoms of 75 percent but noted "consistent" pain at the "seven to eight" level (Tr. 337). Plaintiff reported chronic back pain to Dr. Thomas (Tr. 497). An MRI of the cervical spine from the same month showed "mild flattening of the spinal cord" at C5-C6 and C6-C7 (Tr. 373). An MRI of the lumbar spine showed "severe disc space narrowing and degenerative end plate change of the L5-L1 level" (Tr. 374). She was diagnosed with mild to moderate lumbar spondylosis (Tr. 375).

In March, 2015, Plaintiff reported increasing anxiety (Tr. 424). She was prescribed Neurontin along with psychotropic medications (Tr. 425). In June, 2015 epidural injections, physical therapy, and home exercises were recommended (Tr. 372). Counseling records state that Plaintiff's psychological condition had improved (Tr. 431). Dr. Thomas' records from the same month note that the back condition was "severe" and "worsening" (Tr. 490). September, 2015 records note Plaintiff's report of ongoing lumbar spine and left shoulder pain (Tr. 360, 470). The same month, she sought emergency treatment for a shoulder injury (Tr. 557). Dr. Thomas noted a history of radiating musculoskeletal back pain (Tr. 474, 479, 484). She exhibited reduced range of lumbar spine motion (Tr. 361). Epidural injections

were administered without complications (Tr. 362). Counseling notes state that she was medication compliant but reported sleep disturbances (Tr. 432).

In October, 2015, James Moravek, M.D. noted Plaintiff's report of continuing left shoulder pain despite the use of Oxycodone and Norco (Tr. 509). He recommended physical therapy, reduction of narcotic medication use, and icing (Tr. 510). October, 2015 therapy records note the diagnosis of impingement syndrome of the left shoulder (Tr. 341). Discharge records note that Plaintiff's shoulder pain was reduced to a "two" out of "ten" (Tr. 353).

Plaintiff reported "no improvement" in a psychiatric medication review of February, 2016 (Tr. 438). In April, 2016, Dr. Thomas completed a medical source statement stating that due to chronic neck and low back pain with radicular symptoms, Plaintiff was unable to stand or walk for more than 15 minutes or sit for more than 30 (Tr. 556). Dr. Thomas found that she was limited to standing or walking for 60 minutes in an eight-hour workday (Tr. 556). He limited her to lifting only 10 pounds on an occasional basis and only occasional pushing or pulling (Tr. 556). He found that she would be required to take unscheduled work breaks due to fatigue and poor motor strength (Tr. 556).

### 2. Consultative and Non-Examining Sources

In December 2014, Thomas Martin Horner, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a 2011 hospitalization after a drug overdose and Post Traumatic Stress Disorder ("PTSD") as a

result of her husband's 2009 suicide (Tr. 305). She reported that she last worked in 2003 at a pharmacy as a cashier and "straightening shelves" (Tr. 305). She left due to back and emotional problems (Tr. 305). She admitted to a history of alcohol and Vicodin abuse (Tr. 306). Plaintiff reported that she used braces for CTS at night (Tr. 307). Dr. Horner found that Plaintiff was "not a shirker by nature or by attitude" (Tr. 308). He found her capable of coping with ordinary work stresses but noted that her work abilities could be complicated by the physical conditions (Tr. 308).

The same month, Adam McKenzie, D.O. examined Plaintiff on behalf of the SSA, noting Plaintiff's report of spinal disc problems diagnosed in October, 2014 (Tr. 310). Plaintiff reported that she experienced radiating pain in all extremities (Tr. 310). She reported symptoms of CTS but stated that she never wore wrist braces (Tr. 310).

Dr. McKenzie observed a normal gait and the absence of fine manipulative limitations (Tr. 311). Plaintiff did not experience problems squatting (Tr. 311). She exhibited a limited range of spinal motion (Tr. 313). Plaintiff reported that the condition of asthma was not controlled with inhaler medications and that she was only able to walk two minutes without difficulty (Tr. 313).

Later in December, 2014, Leonard C. Balunas, Ph.D. performed a non-examining psychological assessment on behalf of the SSA, finding that Plaintiff's psychological limitations were non-severe (Tr. 72).

In February, 2015, Mary C. Wood, M.D. examined Plaintiff on behalf of the SSA,

noting Plaintiff's allegations of wheezing (Tr. 316). Dr. Wood noted that the pulmonary function studies showed "a mild degree of COPD" (Tr. 318, 320). Imaging studies of the spine showed disc space narrowing at C5-C6 and C6-C7 (Tr. 319). Later in February, 2015, Donald H. Kuipper, M.D. performed a non-examining assessment of Plaintiff's physical work-related limitations, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday, and push and pull without limitations (Tr. 73-74). He found that Plaintiff was limited to stooping and climbing ladders, ropes, and scaffolds occasionally and stooping and climbing ramps and stairs frequently (Tr. 74). He also found that Plaintiff should avoid temperature extremes, humidity, vibrations, and airborne hazards (Tr. 74-75).

### 3. Evidence Submitted After the June 1, 2016 Administrative Determination[3]

April 18, 2016 records state that Plaintiff had been "smoke free" for three days (Tr. 575). Dr. Thomas' records note that Plaintiff continued to report neck and low back pain (Tr. 575). July, 2016 records state that the condition of anxiety was stable (Tr. 581). In August, 2016, Dr. Thomas advised that a recent Pap smear showed a high risk of Human Papilloma Virus ("HPV") (Tr. 580).

### C. VE Testimony

VE Annette Holder classified Plaintiff's former job as a warehouse worker as

---

[3] Because Plaintiff has not provided "good cause" for failing to submit these records subsequent to the June 1, 2016 administrative decision, the Court cannot consider whether they support a remand for further administrative proceedings. 42 U.S.C. 405(g).

exertionally medium and unskilled and work as a cashier (the VE changed the original report of retail clerk to cashier) light/semiskilled (medium as performed)[4] (Tr. 52). The ALJ then posed the following question, describing a hypothetical individual of Plaintiff's age, education, and work experience,:

> [A]ssume . . . an exertional limitation lifting 20 pounds, lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting six hours; standing six hours; walking six hours; pushing and pulling as much as she can lift and carry. There's frequent climbing ramps and stairs, occasionally climbing ladders, ropes and scaffolds. Stooping is frequent. Environmentally, the individual should avoid concentrated exposure to humidity and wetness, respiratory irritants, extreme temperatures, vibration. And if we put this individual at the semiskilled level, could such a person be expected to perform claimant's past relevant work? (Tr. 52-53).

Based on the hypothetical limitations, the VE found that the individual would be able to perform Plaintiff's past relevant work as a cashier (as generally performed at the light exertional level) (Tr. 53). The ALJ then described a hypothetical individual including the more restrictive limitations alleged by Plaintiff:

> [L]ifting, carrying 10 pounds occasionally, less than 10 pounds frequently. They are sitting less than one hour, but no more than 30 minutes at a time. Walking is less than one hour with less than 15 minutes at a time. Pushing and pulling is occasional with the bilateral upper extremities. And there's also occasional pushing and pulling with the bilateral lower extremities. Putting

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

this individual at the semiskilled level, could such a person be expected to perform claimant's past relevant work? (Tr. 53).

VE testified that the additional restrictions would preclude all competitive employment (Tr. 53). She testified further that Plaintiff's concentrational problems and need to address pain the majority of the time would also preclude all work (Tr. 54). The VE stated that her job testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 54).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of asthma, degenerative disc disease, osteoarthritis, and CTS but that none of the conditions met or medically equaled a "listed impairment" under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-24). He found that the condition of affective disorder did not cause more than "minimal limitation" in Plaintiff's work abilities (Tr. 23). The ALJ found that Plaintiff had the residual functional capacity ("RFC") for exertionally light work with the following restrictions:

> [F]requently climb ramps and stairs but only occasionally climb ladders, ropes, and scaffolds; frequent stooping; avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants; avoid concentrated exposure to temperature extremes; and avoid concentrated exposure to vibrations (Tr. 25).

The ALJ concluded that the RFC allowed for Plaintiff's past relevant work as a cashier (Tr. 28-29).

The ALJ discounted Plaintiff's allegations of disabling limitations (Tr. 26-28). He

noted that in 2014 and 2015, Plaintiff obtained good results from physical therapy (Tr. 27). He noted that while Plaintiff had been prescribed wrist braces, she did not use them (Tr. 28). He noted that she had not had surgery for CTS (Tr. 28). He cited Dr. McKenzie's December, 2014 finding of normal fine manipulative functioning and full orientation (Tr. 28). The ALJ discounted Dr. Thomas' finding that Plaintiff was limited to less than sedentary work, stating that "the sparse treatment notes do not support the extent of these limitations" (Tr. 27).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. "Outdated" Records

Plaintiff argues that the ALJ's rejection of Dr. Thomas' April, 2016 assessment is not

supported by substantial evidence. *Plaintiff's Brief* at 16-17.  She also contends that the consultative and non-examining records, created between December, 2014 and February, 2015, did not have benefit of the treating records from the rest of 2015 and the first half of 2016 showing that her physical condition worsened.  She argues that the ALJ improperly relied on "outdated" records in support of non-disability.  *Id.* at 17-18.

       The ALJ's reasons for rejecting Dr. Thomas' findings are stated as follows:

       Claimant received general medical care from [Dr.] Thomas . . . . She was treated for hypertension, which is controlled with medication.  Records noted complaints of low back pain.  Dr. Thomas completed a *Medical Source Statement* limiting Claimant to less than sedentary exertion but the sparse treatment notes do not support the extent of these limitations (Tr. 27).

In fact, the records show that while Dr. Thomas did not administer treatment for back pain, he either referred Plaintiff for specialized treatment or noted that she was seeking treatment elsewhere (Tr. 329, 484, 490, 497, 500, 502, 513, 537).  The treatment notes are not "sparse." Further, while the ALJ acknowledged that Dr. Thomas' assessment limited Plaintiff to less than sedentary work, he did not provide any more than a blanket rejection of the findings.  A more thorough discussion of Dr. Thomas' "less than sedentary" findings is particularly critical, given that Plaintiff was 53 at the time of the administrative determination.  Under the "Grids," an individual was limited to exertionally sedentary, unskilled work between the ages 50 to 55 ("closely approaching advanced age") would generally result in a disability finding. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.

        In regard to Plaintiff's "outdated" records argument,  the ALJ's adoption of the

earlier non-treating findings over the April, 2016 treating assessment does not in and of itself constitute error. Instead, "[w]hen an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.' " *Brooks v. CSS*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(*citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

     Here, the ALJ provided some discussion of records post-dating the consultative examinations (Tr. 27). He noted that a September, 2015 MRI of the lumbar spine showed mild to moderate spondylosis and that subsequent physical therapy improved Plaintiff's condition (Tr. 27). However, the more recent records, read in their entirety, point to the conclusion that Plaintiff's condition worsened after February, 2015. Dr. Thomas' June, 2015 records state that the back condition was "severe" and "worsening" (Tr. 490). The same month, she was prescribed physical therapy and home exercises (Tr. 372). Plaintiff received additional steroid injections (Tr. 362). While November, 2015 records state that Plaintiff's *shoulder* pain was reduced to a "two" out of "ten" following physical therapy, she reported that she continued to experienced continuous back pain and range of motion limitations on an ongoing basis despite the use of a number of modalities (Tr. 41, 353). The ALJ's finding that Plaintiff sought treatment from a pain clinic in September, 2015 and did physical therapy

the following month does not reflect the severity or duration of the back condition.

Likewise, as discussed above, the finding that Dr. Thomas' treatment was limited to prescribing medication for hypertension and merely noting "complaints of low back pain," understates Dr. Thomas' long-term involvement in Plaintiff's care and the import of the April, 2016 assessment.[5] Plaintiff's argument that the ALJ glossed over the post-consultative examination records is further strengthened by the fact that the physical RFC in the administrative opinion is wholly identical to Dr. Kuiper's non-examining February 20, 2015 findings (Tr. 25, 74-75). Notably, Dr. Kuiper's findings were drawn from the even earlier December, 2014 consultative observations (Tr. 74-75). The ALJ's unconditional reliance on the December, 2014 observations over any of the evidence created in the following 18 months, considered along with the unsatisfactory rationale for rejecting the treating opinion, warrants a remand for further proceedings.

**B. The Left Shoulder Condition**

Plaintiff's argument that the RFC does not reflect the left shoulder limitations does not provide a basis for remand. *Plaintiff's Brief* at 21-22. In order to qualify for disability, an impairment must last or be expected to last for at least 12 months. 42 U.S.C. §423(d)(1)(A); 20 C.F.R. § 404.1509. Although Plaintiff experienced long-term neck and

---

[5]While Dr. Thomas' April, 2016 treating records, submitted after the administrative decision cannot be considered due to Plaintiff's failure to provide "good cause" for their tardy submission, *See* 42 U.S.C. § 405(g), the ALJ may consider these records upon remand, given the presence of other reversible errors. *Faucher v.HHS,* 17 F.3d 171 (6th Cir. 1994).

lower back problems, the records show that she did not seek treatment for shoulder pain until after a September, 2015 accident (Tr. 471, 557). Because Plaintiff had not experienced the shoulder condition for even nine months at the time of the June 1, 2016 administrative decision, the ALJ did not err in omitting reference to the left shoulder problems in RFC.

### C. Composite Jobs

Last, Plaintiff argues that the Step Four finding that she could perform her past relevant work as a cashier does not reflect that her actual position required her to work as a cashier *and* straighten shelves. *Plaintiff's Brief* at 23-24 (*citing* Tr. 41). She argues that the position was a "composite job," noting that in the case of composite jobs, the record must show that the claimant could do the composite job as actually performed to support a non-disability finding at Step Four of the administrative analysis. *Id.* at 24 (*citing Comeau v CSS,* 2016 WL 1253315, at *9 (E.D. Mich. March 30, 2016)).

At Step Four of the administrative analysis, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2 (1982). As a general rule, the Step Four determination can be supported by the finding that claimant can perform his past relevant work as "actually performed," or, "as generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). In most cases, the claimant "bears the burden of

proving the existence and severity of limitations caused by [the] impairments and the fact that [he] is precluded from performing h[is] past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

Among the former work, Plaintiff listed the pharmacy job as a retail clerk (Tr. 151). She later described the job title only as "general" (Tr. 164). In a preliminary report, the VE characterized the position as "retail clerk" (Tr. 217). However, at the hearing, after listening to Plaintiff's testimony that the position required her to be "at the register" but also "straighten[ing] shelves," the VE changed the "retail clerk" title to "cashier job" (Tr. 41, 52). The ALJ concluded that Plaintiff could perform the job of cashier as generally performed in the national economy (Tr. 29).

However, Plaintiff argues that the position requiring both cashiering and stocking was a "composite job." Under SSR 82-61, "composite jobs" contain "significant elements of two or more occupations." Because composite jobs have "no counterpart in the DOT," such work should be "evaluated according to the particular facts of each individual case" and may require "the services of a vocational specialist or vocational expert." *Id.* A finding that the past relevant work is a composite job creates an exception to the rule that the Step Four finding can be supported by the ability to do the job as actually performed or as generally performed in the national economy. SSR 82–61. The Program Operations Manual System ("POMS"), a handbook "produced for internal use at the Social Security Administration,

provides that 'a composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work as generally performed in the national economy.'" *Comeau*, *supra,* at *9 (*citing* POMS § DI 25005.020)(internal punctuation omitted). "A claimant is only capable of performing a past relevant composite job if he can perform *each of the separate components* of the position." *Id.* (*citing Hansen v. Comm'r of Soc. Sec.,* No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014))(Cox J.)(emphasis added). In short, the evidence must establish that the individual is capable of doing the former work as actually performed rather than "as generally performed" in the national economy.

However, the fact that Plaintiff's former position required multiple tasks does not make it a "composite job." Defendant notes that DOT § 211.462.014, describing the responsibilities of a "Cashier-checker," encompasses both the cashiering and stocking responsibilities of Plaintiff's former work:

> Operates cash register to itemize and total customer's purchases in grocery, department, or other retail store: Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchases on cash register. Collects cash, check, or charge payment from customer and makes change for cash transactions. *Stocks shelves* and marks prices on items. Counts money in cash drawer at beginning and end of work shift. May record daily transaction amounts from cash register to balance cash drawer. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May cash checks. May use electronic scanner to record price. May be designated according to items checked as Grocery Checker (retail trade). (Emphasis added).

In contrast to composite jobs which have "no counterpart in the DOT," the DOT includes a job listing comparable to self-described Plaintiff's position. As such, the ALJ's discrete

-18-

finding that Plaintiff could perform her past relevant work as a cashier *as generally performed* does not constitute grounds for a remand.[6]

While the errors discussed in Section A require a remand, an award of benefits would be premature. An award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.HHS,* 17 F.3d 171, 176 (6th Cir. 1994). Therefore, upon remand, the ALJ will augment his discussion of the treating physician's opinion *and* discuss the impact, if any, of the newer records on the RFC.

## VI. CONCLUSION

For these reasons, Defendant's motion for summary judgment [Dock. #21] is DENIED, Plaintiff's motion for summary judgment [Dock. #16] is GRANTED to the extent that the case is remanded for further administrative proceedings.

Judgment for Plaintiff will be entered.

IT IS SO ORDERED.

                                                   s/ R. Steven Whalen
                                                   R. STEVEN WHALEN
                                                   UNITED STATES MAGISTRATE JUDGE

Dated: March 26, 2018

---

[6]Of course, a finding upon remand that Plaintiff was limited to sedentary work would, among other things, invalidate that finding that she could perform her past relevant exertionally light work.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 26, 2018, electronically and/or by U.S. mail.

                                          s/Carolyn M. Ciesla
                                          Case Manager to the
                                          Honorable R. Steven Whalen